NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2960
_____

LAURA A. YINGST,

Appellant

v.

COATESVILLE HOSPITAL COMPANY, LLC,
d/b/a Brandywine Hospital

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-18-cv-04558)
Honorable Nitza I. Quiñones Alejandro, United States District Judge

_____

Submitted under Third Circuit L.A.R. 34.1(a)
June 2, 2021

BEFORE:  HARDIMAN, PHIPPS , and COWEN, Circuit Judges

(Filed:  July 14, 2021)
_____

OPINION*
_____

---

\* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

COWEN, Circuit Judge.

Plaintiff Laura A. Yingst appeals from the order of the United States District Court for the Eastern District of Pennsylvania granting the motion for summary judgment filed by Defendant Coatesville Hospital d/b/a Brandywine Hospital ("Brandywine"). We will affirm.

I.

Yingst began working as a nurse at Brandywine in 1987, and after holding several positions at the hospital she decided to take a temporary travel nurse position in Florida in November of 2016. Since 1997, she worked as a per diem nurse, and, since 2010, she was assigned to Brandywine's Post-Anesthesia Care Unit ("PACU"). Yingst was diagnosed with breast cancer in July 2014. Yingst's cancer caused her to be unavailable for work on several occasions in 2014 and 2015. Her unavailability often lasted two to three weeks but at one point lasted almost two months. After Yingst returned to work, the hospital filled three nursing positions but did not promote Yingst.

Yingst filed this action alleging disability discrimination and retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.,* and the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. § 951 *et seq.* "Yingst alleged that Brandywine discriminated against her because of her disability (breast cancer), and retaliated against her for complaining about the discrimination, when her supervisor [Justine Murphy, Brandywine's Director of Perioperative Services] refused to hire her for three regular nursing positions [(Positions 1, 2, and 3)]." (Appellant's Brief at 16.) Brandywine moved for summary judgment. The District Court granted the motion and entered

2

judgment in favor of Brandywine and against Yingst.  According to the District Court, "[b]ecause Defendant has articulated legitimate, nondiscriminatory reasons for failing to hire Plaintiff, and Plaintiff has not identified sufficient evidence in the record to support a conclusion that Defendant's reasons were pretextual, Defendant's motion for summary judgment is granted."  Yingst v. Coatesville Hosp. Co., LLC, CIVIL ACTION NO. 18-4558, 2020 WL 5602653, at *1 (E.D. Pa. Sept. 18, 2020).

## II.

Yingst acknowledges that the District Court "correctly identified the legal framework applicable to Yingst's discrimination and retaliation claims as set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), which proceeds in three steps."[1]  (Appellant's Brief at 19.)  The District Court, in turn, disposed of this case at the third "pretext" step of the analysis.  Yingst contends that the District Court, instead of permitting the jury "to weigh the credibility of both Murphy and Yingst, as well as other witnesses, and evaluate the persuasiveness of conflicting evidence relating to each of the three hiring decisions at issue," conducted its own assessment of the conflicting evidence to determine that Brandywine's reasons for refusing to hire her were not pretextual.  (Id. at 17.)  "In doing so, the district court failed to apply the summary judgment standard, and instead ignored facts in the record, improperly weighed competing evidence, and refused to construe all reasonable inferences in Yingst's favor."  (Id. at 18.)

We conclude that the District Court appropriately disposed of this matter on

---

[1] The District Court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.  We have appellate jurisdiction under 28 U.S.C. § 1291.

summary judgment.  In order to defeat summary judgment at the pretext stage, a plaintiff must point to evidence from which a reasonable finder of fact could either disbelieve the employer's articulated legitimate reasons or find that an invidious reason was more likely than not a motivating or determinative cause of the adverse employment action.  See, e.g., Fuentes v. Perskie, 32 F.3d 759, 764-65 (3d Cir. 1994) (stating that, in meeting burden to discredit, plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, or contradictions in articulated reasons that could cause reasonable factfinder to find them unworthy of credence and thereby infer that employer was not motivated by asserted non-discriminatory reasons).  Given the record in this case, a reasonable juror could not find that Brandywine's proffered reasons for its hiring decisions were pretextual.

Yingst asserts that the District Court improperly dismissed evidence of biased statements made by Murphy herself.  Specifically, Murphy stated in a memorandum dated May 3, 2016 that "Laura Yingst is one of the 4 staff left and has had 4 surgeries over the past year and been out a good amount of time."  (A2172.)  "Second, about six weeks later, when Yingst confronted Murphy about not hiring her [for Position 3] after seeing [Michael] Sheridan scheduled for full-time in the PACU, Murphy admitted that it was 'because [Yingst] missed too much time.'"  (Appellant's Brief at 22 (quoting A1984).)  However, "Murphy's memorandum was drafted for the purpose of obtaining approval for additional PACU positions (further, Plaintiff does not dispute the veracity of Murphy's comment)."  Yingst, 2020 WL 5602653, at *7.  "Murphy's June comment was made at the time between Plaintiff's application for Position 1 and her interview for

4

Position 2; during that time, according to Plaintiff, 'Murphy and Ms. [Kelly] Besack [Brandywine's Human Resources Director] were discussing [Plaintiff's] eligibility for a transfer,' which included a standard review of her employee file," id. (See also, e.g., Appellant's Brief at 12 (acknowledging that, while Besack would have only checked for "call outs" if the hiring manager had specifically requested it, "Besack also provided Murphy with a list of Yingst's prior disciplinary warnings from 2011 and earlier, which is something she reviews for any internal candidate looking to transfer" (citing A2289-A2292)).) Significantly, the records produced by Besack implicated absences (and related disciplinary actions) predating Yingst's cancer diagnosis by several years, and accordingly none of the referenced absences relate to her breast cancer. Yingst was thereby deemed eligible for Position 2 because the attendance issues were so old (as Besack put it, extremely dated absences "all rolled off" (A1721)).

With respect to Position 1 (a part-time position in the PACU), Brandywine proffered that, prior to Yingst's application on May 31, 2016, an external candidate named Denise Childs had already applied, been interviewed, and been hired for the position. According to Yingst, "there is a genuine issue of material fact as to when Brandywine made the decision to offer the job to Childs." (Appellant's Brief at 25.) Specifically, she points to data from Brandywine's recruiting database indicating that no written offer was made to Childs until June 20, 2016. Yingst observes that Brandywine's database indicated that Childs was "hired" on June 20 "even though [Human Resources Manager Dina] Criniti testified that a candidate is hired only after pre-employment screenings are complete" and the background check was not completed until after July 8,

2016 (and Childs did not sign the authorization form for the background checks until June 27, 2016). (Id. at 25-26 (citing A2175, A2107, A2312), see also Appellant's Reply Brief at 8 n.2 (noting that database indicated "Offer created" on June 16, 2016 and "Offer 1 – Extended (Verbally)" on June 20, 2016 (quoting A2107-A2108)).) However, we agree with the District Court that, at best, this evidence merely indicated that the position was not formally filled until June 20, 2016. In fact, "both Murphy and Criniti consistently and repeatedly testified that an offer was made to Childs on May 27th, and that post-offer, pre-employment screenings, which typically take 'about a month,' had to be conducted prior to officially marking the position as filled." Yingst, 2020 WL 5602653, at *5 (citing A646, A1457, A1466); see also, e.g., id. ("[B]oth Murphy and Criniti testified that the decision to hire Childs was made on May 27, 2016 – several days before Plaintiff had even applied for Position 1. ([A630, A644, A1458, A1461, A1468, A1470])."). We further note that Yingst was not the only internal candidate to apply for Position 1 after May 27, 2016 (and who was then allowed to interview for Position 2). "Rather, much like Plaintiff, Nurse [Jeannette] Maerz, an internal and qualified candidate [and breast cancer survivor] who applied to Position 1 after it had been offered to someone else but before it was officially marked as filled, was considered for Position 2." Id. at *6 n.4.

With respect to this other part-time PACU position (Position 2), the District Court properly determined that Yingst cannot show that Brandywine's stated reasons for selecting Maerz over Yingst for that position were pretextual in nature. "Murphy testified that Maerz was hired over Plaintiff based on Plaintiff's poor interview

6

performance and, perhaps to some extent, on reports by staff members of past conflicts with Plaintiff." Id. at *6 (citing A670-A672) (noting that Murphy testified that she had some awareness of interpersonal difficulties, that she generally did not go against the staff consensus on hiring decisions, and that Yingst's potential unavailability played no role in interview process). The two employees were interviewed on the same day, and Maerz was given even less advance notice of the interview than Yingst. In fact, "Plaintiff testified that she 'had the privilege of having [her] interview in a conference room, while [Maerz] had hers in a . . . utility room.'" Id. at *7 (quoting A300).

As the District Court succinctly put it, "Plaintiff's interview did not go well." Id. at *6. Admittedly, Yingst observes that, according to Maerz, she was not asked the same question that so upset Yingst herself (i.e., what she could bring to the PACU), the interviewers evidently did not read out their questions from a script (even though Brandywine claims that they did so), and, "although Maerz described herself as being 'polite' during her interview, it is clear that she, like Yingst, asked probing questions of the Charge Nurses to address her concerns about the fairness of scheduling in the PACU" (Appellant's Brief at 38 (citing A2279, A2282-A2283); see also, e.g., id. at 39 (taking issue with failure to produce interview "score sheets")). "On its own, the interview question which triggered Plaintiff's unprofessional response—whether or not it was also asked of Maerz—even if intentionally insulting, does not suggest any discriminatory animus related to Plaintiff's disability." Id. at *7 (citing Cross v. New Jersey, 613 F.App'x 182, 186 n.1 (3d Cir. 2015)). In any event, Yingst's conduct at the interview went beyond merely asking some probing questions. Yingst admitted in her deposition

testimony that she found the first question to be insulting and degrading and then responded: "I can't believe that you asked me that. I thought I was part of the PACU team. How can you ask me about my skills? You've worked shoulder to shoulder with me. You know my skills. You know my strong points, my weak points." (A297-A298.) "Though Plaintiff testified that she did not 'yell at anybody or throw things,' multiple witnesses present during the interview felt that her reaction to the question was unprofessional and reflected poorly on her candidacy." Id. at *6. One of her interviewers (Denise Ricken) went so far as to describe Yingst's interview as "a complete disaster," claiming that Yingst was "rude, unprofessional, and obnoxious." (A1279.) Even if (inter alia) Maerz may have had her own problems with her co-workers and Murphy may have continued to evaluate Yingst positively, the disastrous nature of Yingst's own interview still cannot be overlooked. Furthermore, even if "the Charge Nurses expressed upset to Maerz about Yingst's unavailability to work during her cancer treatments because it made it harder to manage the schedule in the PACU" (Appellant's Brief at 36 (citing A2277)), Yingst's co-workers clearly had other non-discriminatory issues with her in addition to her troubling behavior at the interview (e.g., Ricken claimed that "I have never worked with such an unprofessional and two-faced nurse in my entire professional career" (A1278)).

Finally, "Defendant argues that Plaintiff's failure to apply directly for [full-time] Position 3 (in contrast with the applicant ultimately hired, Michael Sheridan, who submit[ted] an application for Position 3) constitutes a legitimate reason for having hired Sheridan." Id. at *7. "A review of the record reveals that Plaintiff indicated her interest

8

in full-time positions in the PACU sporadically." Id. As the District Court explained:

> Plaintiff identifies only one occasion "in Spring 2015" when she indicated to Murphy that she would be interested in a regular (as opposed to per diem) position, and a handful of text messages "in the late winter/early spring 2016" about her interest in interviewing for a regular position in the PACU. Moreover, beginning in February 2016, Plaintiff expressed repeated interest to Murphy in nursing positions outside of Brandywine, particularly in Florida. For example, on February 29, 2016, Plaintiff texted Murphy to advise her that she had used her as a reference for a Florida-based travel nursing agency in Florida. A week later, Plaintiff texted Murphy again, having listed her as a reference for another nursing agency in Florida. This Court agrees with Defendant that Plaintiff's occasional communications of interest in regular employment, coupled with her demonstrated pursuit of outside opportunities, did not constitute "every reasonable attempt to convey [her] interest" in Position 3, see [EEOC v. Metal Servs. Co., 892 F.2d 341, 348 (3d Cir. 1990)], particularly in comparison to Sheridan, who proactively sought Murphy's attention and ensured [or at least attempted to ensure] that his application for Position 3 was received despite technical difficulties. That Murphy advised Sheridan of the position but did not mention it to Plaintiff, under these circumstances, cannot cause a reasonable jury to conclude that Defendant's articulated reasons for hiring Sheridan, and not Plaintiff, were pretextual.

Id.

## III.

For the foregoing reasons, we will affirm the order of the District Court.

9